UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of<br>THE REPUBLIC OF TÜRKIYE<br>Applicant for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in Foreign Proceedings | Case No. 1:24-mc-00557-JPC<br>**Oral Argument Requested** |

**CEVDET TURKYOLU'S REPLY IN SUPPORT OF HIS MOTION TO QUASH SUBPOENAS SERVED BY THE REPUBLIC OF TÜRKIYE PURSUANT TO 28 U.S.C. § 1782 AND TO VACATE THE COURT'S AUTHORIZING ORDER**

STEPTOE LLP

Michael C. Miller
Daniel W. Podair
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
mmiller@steptoe.com
dpodair@steptoe.com

*Counsel for Cevdet Turkyolu*

Dated: May 16, 2025

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................1

I. Turkey was Required to Serve Notice and Copies of the Subpoenas on Mr. Turkyolu ........................................................................................................................1

II. Turkey Failed to Satisfy Section 1782's Statutory Requirements or the Intel Factors ........................................................................................................................3

A. The Requested Discovery is Not for "Objective" and "Impartial" Use ..................3

B. Turkey's Application Provides Only Vague and Conclusory Allegations .............5

C. The Discretionary Intel Factors Weigh In Favor of Mr. Turkyolu ..........................7

III. Turkey Fails to Establish that the Motion Should be Based on Fed. R. Civ. P 45(d)..........8

IV. Turkey Fails to Establish that the Motion Should be Based on Fed. R. Civ. P. 60(b) ........................................................................................................................9

V. Turkey Does Not Establish That It is Immune from Remedial Measures .........................10

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight International Ltd.*
869 F.3d 121 (2d Cir. 2017)....................6

*In re Accent Delight Int'l*,
16-MC-125 (JMF), 2019 WL 6716419 (S.D.N.Y. Dec. 10, 2019) ....................10

*Aguinda v. Texaco, Inc.*,
142 F.Supp.2d 534 (S.D.N.Y. Jan. 31, 2000) ....................5

*Allied Bank Intern. v. Banco Credito Agricola de Cartago*,
757 F.2d 516 (2d Cir. 1985)....................7

*In re Application of Sarrio*,
119 F.3d 143 (2d Cir. 1997)....................8

*In re Banco BGT Pactual S.A.*,
24 Misc. 304 (AT), 2025 WL 1079221 (S.D.N.Y. Apr. 9, 2025)....................9

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964)....................7

*In re BonSens.org*,
95 F.4th 75 (2d Cir. 2024) ....................6

*Bridgeway Corp. v. Citibank*,
201 F.3d 134 (2d Cir. 2000)....................5

*Caleb and Brown Pty Ltd. v. Thompson*,
20 Civ. 8612 (LAP), 2021 WL 4226183 (S.D.N.Y. Sep. 16, 2021)....................3

*In re China Const. Bank (Asia) Corp. Ltd.*,
23-MC-17 (JMF), 2023 WL 3791711 (S.D.N.Y. Jun. 2, 2023) ....................9

*In re Costa Pinto*,
21-MC-663 (VEC), 2022 WL 4088012 (S.D.N.Y. Sep. 6, 2022) ....................9

*Fonseca v. Blumenthal*,
620 F.2d 322 (2d Cir. 1980)....................4, 5

*Garrido v. Klainberg*,
No. 16-CV-9464 (RA), 2020 WL 1082566 (S.D.N.Y. Mar. 6, 2020)....................3

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....................1, 3, 7, 9

*In re Investbank PSC*,
20 Misc. 260 (AT), 2020 WL 8512850 (S.D.N.Y. Dec. 30, 2020) ....................3

*Jacubovitch v. Israel*,
397 F.Supp.3d 388 (S.D.N.Y. 2019) *aff'd*, 816 Fed. Appx. 505 (2d Cir. 2020) ....................10

*In re Letters of Request from the Sup. Ct. of H.K.* ....................2

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
385 F2d 1017 (2d Cir. 1967)....................4, 5

*Lin v. Yuri Sushi, Inc.*,
18 Civ. 00528 (GBD) (OTW), 2025 WL 774911 (S.D.N.Y. Mar. 11, 2025) ....................3

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020)....................6

*In re Orthogen Int'l GmbH*,
23-MC-152 (VSB), 2025 WL 1265878 (S.D.N.Y. Apr. 30, 2025) ....................9, 10

*In re Republic of Kazakhstan*,
23-mc-283 (ER), 2023 WL 8373070 (S.D.N.Y. Dec. 4, 2023)....................9

*In re Request from Italy Pursuant to the Treaty Between the U.S. and the Italian Republic on Mutual Assistance*,
No. M12–329 (RO), 2000 WL 193136 (S.D.N.Y. Feb. 16, 2000)....................2

*In re Salem*,
24 Misc. 5 (JPC), 2024 WL 3026670 (S.D.N.Y. Jun. 17, 2024)....................2, 8, 9

*Siderman de Blake v. Republic of Argentia*,
965 F.2d 699 (9th Cir. 1992) ....................10

*Sirer v. Aksoy*,
No. 21-cv-22280-BLOOM/Otazo-Reyes, (S.D. Fla. May 1, 2023) ....................4

**Statutes**

28 U.S.C. § 1782.................... *passim*

**Other Authorities**

Fed. R. Civ. P. 5(a)(2)....................3

Fed. R. Civ. P. 45(a) ....................1, 2, 3

Fed. R. Civ. P. 45(a)(4) .......... 1, 2, 3

Fed. R. Civ. P. 45(d) .......... 1, 8, 9

Fed. R. Civ. P. 60(b) .......... 1, 9, 10

Rule 45 .......... 2, 8

## INTRODUCTION

Turkey's opposition establishes that Mr. Turkyolu's Motion should be granted. First, Turkey's response concedes that it failed to serve Mr. Turkyolu with a copy of the Subpoenas under Fed. R. Civ. P. 45(a) and does not establish that it was exempt from doing so. Second, Turkey erroneously claims that the Motion should be evaluated under Fed. R. Civ. P. 45(d) and Fed. R. Civ. P. 60(b) and not in light of its deficiencies under Section 1782. Third, Turkey fails to substantiate that its Application complies with the statutory requirements of Section 1782. Specifically, Turkey does not refute that the requested evidence will not be used in an "impartial" or "objective" manner as required by Section 1782. Nor does Turkey substantiate the existence of a money laundering investigation or explain how its Application relates to its insider trading prosecution. Fourth, Turkey does not establish that it is entitled to discovery under the *Intel* factors, all but conceding that its Application is untimely and brought in bad faith, Turkey's courts will not provide Mr. Turkyolu with due process, and that the Subpoenas are "unduly intrusive." Finally, Turkey incorrectly claims that, even if the Court concludes the Application is deficient, it is immune from any meaningful remedial measures.

## ARGUMENT

### I. Turkey was Required to Serve Notice and Copies of the Subpoenas on Mr. Turkyolu

Turkey argues that it was not required to serve Mr. Turkyolu with the Subpoenas because Congress, in enacting Section 1782, did not require applicants to serve copies of court authorized subpoenas on parties to the foreign proceedings in which the target discovery was intended for use. *See* ECF No. 28 at 8. But Congress did exactly what Turkey claims it failed to do. Section 1782(a) explicitly states that "[t]o the extent that the order does not prescribe otherwise, the

testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." Fed. R. Civ. P. 45(a)(4) states that "notice and a copy of [a] subpoena must be served on each party." Turkey indisputably knew that the Federal Rules of Civil Procedure applied to the Subpoenas. Turkey's draft Subpoenas, attached to the Application, explicitly referenced Fed. R. Civ. P. 45(a)(4). *See* ECF No. 1-3 at 2, 14.

Having blatantly disregarded the explicit language of Section 1782, Turkey advances a series of baseless fallback positions. First, Turkey wrongly asserts that "the parties to a Section 1782 proceeding are the applicant and the subpoena recipients" and not the parties to the foreign proceeding. ECF No. 28 at 9. This Court recently and correctly rejected this specific argument. *In re Salem*, 24 Misc. 5 (JPC), 2024 WL 3026670, at *16 (S.D.N.Y. Jun. 17, 2024) (Cronan, J.) (applicant "obligat[ed] under Rule 45 to provide notice" to parties in foreign proceeding).

Second, Turkey argues incorrectly that it is not required to comply with the Federal Rules of Civil Procedure when Section 1782 discovery is for use in a foreign criminal proceeding. *See* ECF No. 28 at 8. But that is not the law in this District. *See In re Letters of Request from the Sup. Ct. of H.K.*, 138 F.R.D. 27, 31(S.D.N.Y. 1991) (target of foreign criminal proceeding entitled to notice of depositions pursuant to Section 1782 "unless the Orders prescribed procedures other than the Civil Rules"); *In re Request from Italy Pursuant to the Treaty Between the U.S. and the Italian Republic on Mutual Assistance*, No. M12–329 (RO), 2000 WL 193136, at *2 (S.D.N.Y. Feb. 16, 2000) (Civil Rules applied to foreign criminal proceeding).

Third, Turkey asserts that it was not required to serve Mr. Turkyolu because notice of the Subpoenas "could lead to the destruction of evidence, tampering with witnesses or the flight of potential targets." ECF No. 28 at 8. Turkey's Application could have sought an order that precluded disclosure of the Subpoenas to Mr. Turkyolu. Turkey did not make this request**.** *See*

*In re Investbank PSC*, 20 Misc. 260 (AT), 2020 WL 8512850, at *2 (S.D.N.Y. Dec. 30, 2020) (applicant sought and granted waiver of service under Fed. R. Civ. P. 45(a)(4)).

Third, Turkey's argument that it was not required to serve the Subpoenas on Mr. Turkyolu because "he is a fugitive" is also without merit. ECF Doc. 28 at 8-11. Mr. Turkyolu is not a fugitive. As Turkey concedes in its papers, Mr. Turkyolu left Turkey in 1999, eighteen years before Turkey filed charges against him. *See* ECF No. 26 ¶ 9.

Finally, Turkey incorrectly argues that it was not required to serve the Subpoenas on Mr. Turkyolu because, under Fed. R. Civ. P. 5(a)(2), Mr. Turkyolu has "not appeared in the foreign criminal proceedings." ECF No. 28 at 9. Fed. R. Civ. P. 5(a)(2) is triggered by a finding of default against the party in question. Turkey offers no evidence that Mr. Turkyolu has been "found" or "certified" to be in default in any Turkish criminal proceeding. *See Garrido v. Klainberg*, No. 16-CV-9464 (RA), 2020 WL 1082566, at *3 n.5 (S.D.N.Y. Mar. 6, 2020) (Fed. R. Civ. P. 5(a)(2) not triggered where "there was no finding of default as to" defendant); *Lin v. Yuri Sushi, Inc.*, 18 Civ. 00528 (GBD) (OTW), 2025 WL 774911, at *2 (S.D.N.Y. Mar. 11, 2025) ("[g]enerally, a plaintiff does not need to serve…a party who has already been certified in default for failing to appear"). Nor does Turkey allege that Mr. Turkyolu has been served with any indictment or that he was otherwise required to appear in the alleged money laundering investigation. *See Caleb and Brown Pty Ltd. v. Thompson*, 20 Civ. 8612 (LAP), 2021 WL 4226183, at *2-3 (S.D.N.Y. Sep. 16, 2021) (party never served not in default).

In short, Turkey has failed to establish that it was not required to serve Mr. Turkyolu with the Subpoenas. For this reason alone, the Motion should be granted.

## II. Turkey Failed to Satisfy Section 1782's Statutory Requirements or the Intel Factors

### A. *The Requested Discovery is Not for "Objective" and "Impartial" Use*

The Motion establishes that, in light of the Turkish government's well-documented campaign against members of the Gülen movement and the overall erosion of judicial independence in Turkey, the Bank Records will not be weighed "impartially" or "objectively" against Mr. Turkyolu. *See* ECF No. 24 at 17-21.

Turkey's responds that these arguments are "insulting." *See* ECF Doc. 28 at 15. But Turkey does not deny that Mr. Turkyolu's concerns are well founded. Turkey does not dispute that the evidence it requests will not be used against Mr. Turkyolu "impartial[ly]" or "objectiv[ely]." *See Fonseca v. Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980); *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017, 1021 (2d Cir. 1967). And Turkey does not challenge the accuracy of the court's finding in the recent *Sirer* case, which held that "Turkey has engaged in an open campaign of repression against individuals with perceived or actual ties to FETÖ [Turkey's name for the Gülen movement]" leaving its targets "with few due process protections to defend themselves." *See Sirer v. Aksoy*, No. 21-cv-22280-BLOOM/Otazo-Reyes, 2023 WL 3166453, at *7 (S.D. Fla. May 1, 2023). Similarly, Turkey does not dispute the findings of the European Court of Human Rights in the *Yalçınkaya* case that Turkey "undermine[d] the confidence that courts in a democratic society must inspire in the public and [] breach[ed] fairness of the proceedings." ECF No. 25-3 ¶ 345. Finally, Turkey does not refute the similar concerns voiced by (a) over one hundred and forty Members of Congress to President Biden, (b) the United States State Department, and (c) the United Nations special rapporteur. *See* ECF No. 24 at 11-12, 19-21.

Instead, Turkey claims that Mr. Turkyolu "asks this Court to engage in a wholesale evaluation of the Turkish court system as part of its Section 1782 analysis." ECF No. 28 at 18. Mr. Turkyolu is not asking the Court to involve itself in "matters of foreign policy." *Id.* Mr.

Turkyolu is simply requesting the Court conclude that, under the circumstances, Turkey has failed to demonstrate that the requested evidence will be used by Turkey in an "impartial" or "objectiv[e]" manner. *See Fonseca*, 620 F.2d 322 at 324; *In re Letters Rogatory (India)*, 385 F.2d at 1021. Courts regularly assess the independence and sufficiency of foreign judicial systems and the Court should not hesitate to do so here. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000) (affirming "the Liberian judicial system was not 'a system that ... provide[s] impartial tribunals or procedures compatible with the requirements of due process.'") (citation omitted); *Aguinda v. Texaco, Inc.*, 142 F.Supp.2d 534, 545-6 (S.D.N.Y. Jan. 31, 2000) (assessing ability of Ecuadorian judiciary to "dispense independent, impartial justice.").

Turkey has conceded its Application does not meet the "for use" element of Section 1782, and, for this reason alone, the Motion should be granted.

### B. *Turkey's Application Provides Only Vague and Conclusory Allegations*

Mr. Turkyolu established in the Motion that the Application is utterly lacking in required detail. *See* ECF No. 24 at 21-25. Turkey's arguments in response to this fact are unpersuasive.

First, Turkey claims that Mr. Turkyolu's arguments are "incorrect and condescending." ECF No. 28 at 15. But Turkey's opposition only reinforces Mr. Turkyolu's claims. Turkey offers no additional information about the insider trading case or the alleged money laundering investigation, and about how the discovery it sought through Section 1782 is relevant to either matter. Instead, Turkey simply cites to the barebones allegations in its Application and a handful of new similarly "vague and conclusory" statements. *See e.g.* ECF No. 28-2 at ¶ 10 ("I can certify that the financial records sought in the requested subpoenas are highly relevant to our ongoing investigations and will assist our office in identifying potential violations of Turkish law and in better understanding the nature and circumstances of suspected criminal acts."). In short,

Turkey fails to adequately demonstrate the requested discovery is "minimally relevant" to the insider trading prosecution, *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024), or that "the contemplated [money laundering] proceeding is more than just a twinkle in counsel's eye." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020) (citation omitted)[1].

Second, Turkey argues, without merit, that two other federal court decisions addressing Turkey Section 1782 applications, are irrelevant to the Motion. ECF Doc. 28 at 17. Turkey does not address the fact that these cases involved similar attempts to use "vague and conclusory" allegations to pursue other members of the Gülen movement. *See* ECF No. 24 at 21-22. Instead, Turkey responds to an argument that Mr. Turkyolu never made – that Turkey should have used its MLAT with the United States to facilitate its request. *See* ECF No. 28 at 17.

Finally, recognizing that it has provided no factual basis for its Application, Turkey claims that "providing further specificity regarding the ongoing money laundering investigation would potentially compromise" its investigation. *Id.* at 10. Turkey could have filed a detailed Application and sought to either seal the Application or provide sensitive information *in camera*. It did not. Essentially, Turkey argues that the Court should take its word that it is engaged in an ongoing money laundering investigation. This is not how Section 1782 works. *See Mangouras*, 980 F.3d at 100 ("[a]t a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.") (citation omitted).

Because Turkey's Application is vague and conclusory, the Motion should be granted.

---

[1] Turkey incorrectly suggests that mere "*practical ability*…to place a beneficial document – or the information it obtains – before a foreign tribunal" satisfies Section 1782. (emphasis in original). *In re Accent Delight International Ltd.* 869 F.3d 121, 129-133 (2d Cir. 2017). *Accent Delight* addressed Section 1782's "for use" requirement in context of applicant's *standing* to use evidence in foreign proceeding, not the mere existence of a proceeding.

### C. *The Discretionary Intel Factors Weigh In Favor of Mr. Turkyolu*

Turkey's response to the Motion also confirms that its Application fails to satisfy the discretionary *Intel* factors. First, Turkey all but concedes that its Application was untimely. Turkey does not explain why its Application was filed nearly eight years after Mr. Turkyolu was indicted for insider trading and nearly nine years after the underlying investigation was opened. Turkey also fails to reveal when its money laundering investigation was commenced. Therefore, the Court can safely conclude that Turkey has "provid[ed] no reasonable explanation for its…delay in pursuing a U.S. subpoena." *In re Application of Nascimento for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 14 Misc. 20, 2014 WL 4457141, at *1 (S.D.N.Y. May 13, 2014). Turkey's argument that the dates of the Bank Records justify the timing of its Application puts the cart before the horse. *See* ECF No. 28 at 18. The dates of records Turkey obtained *after it filed* the Application cannot explain its long delay *prior to filing* the Application.

Second, Turkey's arguments under the second (due process) and third (bad faith) discretionary *Intel* factors suffer from the same deficiencies as its argument under Section 1782's "for use" requirement. *See* supra Section II (A). In addition, the cases Turkey cites in support of its position concern the "act of state" doctrine which relates to "inquir[es] into the validity of public acts of a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 400 (1964). Turkey does not explain how Mr. Turkyolu's well-founded concerns about the Turkish judiciary require the Court to engage in any such assessment. In addition, the act of state doctrine does not apply to "[a]cts of foreign governments purporting to have extraterritorial effect" (i.e., investigations into the activities of a US resident; subpoenas to US entities). *Allied Bank Intern. v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 522 (2d Cir. 1985) (citation omitted). Finally, Turkey cites two cases

allegedly reflecting its frequent receipt of "discovery…pursuant to Section 1782 requests." ECF No. 28 at 20. These cases did not implicate Turkey's use of Section 1782 in furtherance of criminal investigations of its political opponents. Nor were these applications opposed.

Finally, Turkey does not attempt to defend the "unduly intrusive" scope of the Subpoenas. Instead, Turkey again claims that it cannot "disclose the key factual underpinnings of [its] ongoing criminal investigation." *Id.* at 23. Turkey asserts that "[t]he subpoenas pertained to financial transactions made contemporaneously with or after transactions identified by Turkish authorities." *Id.* But Turkey does not state when these transactions occurred, how the transactions relate to their purported investigations, or that the transactions even concern suspected criminal activity. Turkey does not explain why it requires over twenty years of records to investigate alleged insider trading which occurred over the span of months. Nor does Turkey substantiate how its excessively broad requests relate to the basic parameters of its purported money laundering investigation.

**III. Turkey Fails to Establish that the Motion Should be Based on Fed. R. Civ. P 45(d)**

Turkey claims that "Intervenor has not argued or established any of the Rule 45[d] factors for quashing a subpoena and therefore his motion to be denied." ECF No. 28 at 12. This argument is frivolous. Courts, including this one, have long recognized that "the ultimate targets of a § 1782 discovery order issued to third parties have 'standing to challenge the district court's power to issue a subpoena *under the terms of an authorizing statute*'" (i.e., Section 1782). *In re Application of Sarrio*, 119 F.3d 143, 148 (2d Cir. 1997) (emphasis added) (citation omitted); *see also Salem*, 2024 WL 3026670 at *9 (citing *Sarrio*).

Therefore, courts regularly assess motions to quash Section 1782 subpoenas under the plain language of Section 1782 and the discretionary factors identified by the Supreme Court in

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). This evaluation is wholly independent from Fed. R. Civ. P. 45(d). *See generally Salem*, 2024 WL 3026670 (evaluating motion to quash Section 1782 subpoena based on language of Section 1782 and discretionary *Intel* factors without any evaluation under Fed. R. Civ. P. 45(d)); *In re Banco BGT Pactual S.A.*, 24 Misc. 304 (AT), 2025 WL 1079221 (S.D.N.Y. Apr. 9, 2025) (same); *In re China Const. Bank (Asia) Corp. Ltd.*, 23-MC-17 (JMF), 2023 WL 3791711 (S.D.N.Y. Jun. 2, 2023) (same).

## IV. Turkey Fails to Establish that the Motion Should be Based on Fed. R. Civ. P. 60(b)

Turkey argues that "[a] motion to vacate the granting of a Section 1782 petition must be made under Rule 60(b)." ECF No. 28 at 13. Motions to vacate Section 1782 orders *are not* governed by Fed. Civ. P. 60(b). Fed. R. Civ. P. 60(b) provides that "[o]n motion and just terms, the court may relieve *a party or its legal representative* from a final judgment, order, or proceeding..." At the time of the Court's Order, Mr. Turkyolu was unaware of this proceeding and had not appeared. Therefore, Fed. R. Civ. P. 60(b) is inapplicable to his Motion.

Instead, in the Section 1782 context, courts evaluate an intervenor's initial request to vacate an authorizing order *de novo*. *See generally In re Costa Pinto*, 21-MC-663 (VEC), 2022 WL 4088012 (S.D.N.Y. Sep. 6, 2022) (considering application to vacate Section 1782 order *de novo*; no reference to Fed. R. Civ. P. 60(b)); *In re Republic of Kazakhstan*, 23-mc-283 (ER), 2023 WL 8373070 (S.D.N.Y. Dec. 4, 2023) (same).

The two cases Turkey cites in support of its erroneous argument illustrate why Fed. R. Civ. P. 60(b) *does not* apply in this proceeding. In both cases, the intervenor appeared in the proceeding *prior to* the issuance of an authorizing order and previously challenged the application. *See In re Accent Delight Int'l*, 16-MC-125 (JMF), 2019 WL 6716419 (S.D.N.Y. Dec. 10, 2019) (intervenor seeking to relitigate failed challenge to Section 1782 petition); *In re*

*Orthogen Int'l GmbH*, 23-MC-152 (VSB), 2025 WL 1265878 (S.D.N.Y. Apr. 30, 2025) (same). That is not the case here. Therefore, Fed. R. Civ. 60(b) is not applicable.

## V. Turkey Does Not Establish That It is Immune from Remedial Measures

Turkey objects to any order issued by this Court which requires it to destroy the Bank Records. *See* ECF No. 28 at 24-27. Turkey asks this Court to agree that Turkey can voluntarily avail itself of Section 1782 discovery in this Court without having to abide by the rules attendant to that discovery process. Turkey provides no authority for this troubling request.[2]

Turkey does not dispute that it voluntarily subjected itself to the Court's jurisdiction by filing the Application. Turkey does not deny that it then availed itself of the benefits of the Order by serving the Subpoenas on the Bank and receiving the Bank Records. Therefore, having "engage[d] our courts in the very course of activity for which [another party] seek[s] redress it has waived its immunity as to that redress." *Siderman de Blake v. Republic of Argentia*, 965 F.2d 699, 722 (9th Cir. 1992).

Turkey's request is entirely inappropriate. Any remedy that does not direct Turkey to destroy the Bank Records will permit Turkey to continue using the Bank Records and benefit from its deficient Application and its failure to abide by the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons explained herein, Mr. Turkyolu respectfully requests that the Court quash the Subpoenas, vacate the Order, and direct Turkey to cease using and destroy the Bank Records.

[2] Turkey incorrectly claims that the Second Circuit has "noted a finding of [a] district court that implied waiver based on a foreign state responding to Section 1782 would be inconsistent with congressional intent." ECF No. 28. Neither the district court nor the Second Circuit expressed any concern about waiver where the foreign sovereign has actively participated in the *very same action*, no less where it has affirmatively initiated that proceeding. *See Jacubovitch v. Israel*, 397 F.Supp.3d 388, 395 (S.D.N.Y. 2019) *aff'd*, 816 Fed. Appx. 505 (2d Cir. 2020).

Dated May 16, 2025

STEPTOE LLP

By:*/s/ Michael C. Miller*
Michael C. Miller
Daniel W. Podair
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
mmiller@steptoe.com
dpodair@steptoe.com

*Counsel for Cevdet Turkyolu*

## CERTIFICATION OF WORD COUNT

I hereby certify that, pursuant to Local Civil Rule 7.1, the above Memorandum of Law, exclusive of the caption, table of contents, table of authorities, and signature block, contains 3,489 words and is therefore compliant with the word count limitations under Rule 7.1. I further certify that the above Memorandum was prepared on a computer using Microsoft Word.

Dated: New York, New York
May 16, 2025

*/s/ Michael C. Miller*
Michael C. Miller