UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                      :
In re Application of                                                  :
                                                                      :
THE REPUBLIC OF TÜRKIYE,                                              :
                                                                      :         24 Misc. 557 (JPC)
Applicant for an Order Pursuant to                                    :
28 U.S.C. § 1782 to Conduct Discovery                                 :         OPINION AND ORDER
for Use in Foreign Proceedings                                        :
                                                                      :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Cevdet Turkyolu, a member of the faith-based Gülen movement, is one of several targets

of a Turkish money-laundering investigation and insider-trading prosecution.  Pursuant to an

application under 28 U.S.C. § 1782 that the Court approved late last year, the Republic of Türkiye

served subpoenas on two American banks seeking financial records and other documents

pertaining to Turkyolu and four others that Türkiye claims will advance those criminal matters.

The banks later produced a number of records, which Türkiye then provided in support of another

(currently pending) discovery application under Section 1782.

      Turkyolu now moves to quash both subpoenas and to vacate the Court's prior Order

granting Türkiye's application.  According to Turkyolu, Türkiye's application does not represent

a *bona fide* attempt to seek evidence relevant to the criminal matters involving him, but is instead

part of a years-long campaign of harassment and retaliation against the Turkish government's

political enemies and the Gülen movement in particular.  For that reason, Turkyolu says, Türkiye's

application cannot satisfy Section 1782's requirement that the discovery sought be "for use" in a

foreign proceeding.  And even setting that issue aside, Turkyolu maintains that Türkiye's

application is unduly intrusive and made in bad faith, justifying denial of the application on

discretionary grounds. Turkyolu also contends that Türkiye did not serve the subpoenas in compliance with Federal Rule of Civil Procedure 45, presenting an independent basis to quash.

For the following reasons, the Court agrees that Türkiye failed to comply with Rule 45 in serving the subpoenas and that the materials submitted by Türkiye in support of its application— a three-page declaration and a copy of a 2017 insider-trading indictment—do not adequately support its request for discovery in light of Turkyolu's colorable allegations of improper motive. The Court therefore grants Turkyolu's motion to quash the subpoenas, vacates its prior Order granting Türkiye's application, and directs the parties to submit supplemental briefing addressing the appropriate remedy regarding the documents that Türkiye has already obtained pursuant to the quashed subpoenas.

## I. Background

### A. Factual Background

#### 1. Turkyolu and the Gülen Movement

Turkyolu, who currently lives in the United States, is a member of the Gülen movement, a "faith based civic society initiative." Dkt. 26 ("Turkyolu Decl.") ¶ 3. According to Turkyolu, the Gülen movement "is known for its emphasis on and commitment to active civic participation, community service, and open dialogue, all grounded in modern and democratic principles." *Id.* ¶ 5.

The Gülen movement "emerged from the sphere of Civil Islam in the late 1960[]s under the leadership of Fetullah Gülen, a Turkish scholar, who lived in self-exile in Pennsylvania from 1999 until his passing in 2024." *Id.* ¶ 4. Turkyolu was introduced to the movement after attending Mr. Gülen's sermons in Izmir, Türkiye, and became a member in 1972. *Id.* ¶ 6. Beginning in 1974, Turkyolu "served as a trusted and loyal aide to Mr. Gülen." *Id.* ¶ 7. In 1999, Turkyolu

moved to the United States together with Mr. Gülen, taking on the role of Mr. Gülen's personal assistant. *Id.* ¶ 8. In that capacity, Turkyolu "was responsible for managing Mr. Gülen's daily schedule until Mr. Gülen['s] death in October 2024." *Id.* Turkyolu has not travelled back to Türkiye since leaving the country in 1999. *Id.* ¶ 9.

In or around 2013, the relationship between the Gülen movement and Türkiye's ruling Justice and Development Party, once political allies, soured. *Id.* ¶ 11. Turkyolu alleges that since then, "the Turkish government has been engaged in a well-documented, prolonged, and improper campaign of harassment and abuse directed against the Gülen movement and its members." *Id.* ¶ 10. As part of that alleged harassment campaign, Turkyolu contends that he "became a target of the Turkish government's crackdown on the Gülen movement" and that, in the wake of "an unsuccessful coup attempt in July 2016," the Turkish government "confiscated multiple business" that he owned. *Id.* ¶ 11. Turkyolu further alleges that he has "been subject to relentless defamatory attacks by the government-aligned Turkish media, including outlandish claims of criminal activity." *Id.* ¶ 12. For these reasons, Turkyolu says he is certain that "the evidence requested by the Turkish government in its [discovery application in this matter] will not be used in an impartial or objective proceeding." *Id.* ¶ 13.

### 2. Türkiye's Section 1782 Application

On December 3, 2024, Türkiye filed an *ex parte* discovery application pursuant to 28 U.S.C. § 1782. Dkt. 1 ("Application"). The Application sought leave to serve substantively identical subpoenas on Bank of America, N.A. ("Bank of America") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Respondent Banks"), seeking financial records and other documents pertaining to Turkyolu and four other Turkish individuals—Hasan Sayin, Ybrahym

Sayin, Muhammet Erhan Koseoylu, and Ferhat Aktay.  *Id.* ¶ 1; *see* Dkt. 1-3 ("Subpoenas").  Those

Subpoenas direct each Respondent Bank to produce the following materials:

- All documents relating to financial transactions made in U.S. dollars to, from, and through accounts held by, Cevdet Turkyolu, Hasan Sayin, Ybrahym Sayin, Muhammet Erhan Koseoylu, and/or Ferhat Aktay, including any financial transactions made through [the respective Respondent Bank] as correspondent or intermediary bank.  This includes all bank statements and any other records showing transfer of money and any other financial instrument, including but not limited to checks, wire transfers, or any other method of transfer between December 18, 2002 and the present.

- All documents and communications relating to Cevdet Turkyolu, Hasan Sayin, Ybrahym Sayin, Muhammet Erhan Koseoylu, and/or Ferhat Aktay, including all documents and communications relating to potential fraud, money laundering or suspicious activity related to them individually or collectively.

Subpoenas at 7, 19.

In its Application, Türkiye represents that these materials are relevant to two criminal

matters involving Turkyolu and his associates: an "ongoing criminal prosecution . . . for insider

trading" and an "investigation for potential money laundering."  Application ¶ 2.  Türkiye explains

that it is "actively investigating the financial activities of Turkyolu and the other four named

individuals as it relates to suspected attempts by them and other individuals to launder money in

violation of Turkish law, and seeks discovery related to their banking activities at the Respondent

Banks."  *Id.* ¶ 4.

In support of its Application, Türkiye attached a declaration by Veysel Kaçmaz, the Deputy

Chief Public Prosecutor of Ankara.  Dkt. 1-2 ("Kaçmaz Decl.").  In his declaration, Mr. Kaçmaz

states that he is "aware of active and ongoing prosecutions of [Turkyolu] and associated

individuals for insider trading and money laundering."  *Id.* ¶ 3.  Mr. Kaçmaz further explains that

> [a]mong these cases is one that is focused on, among other things, whether the proceeds of illicit activities (including those taking place within the United States of America) have been transmitted and transferred, through international wire transfers and other means, to individuals and entities operating within the Republic

of Türkiye in violation of the prohibitions on money laundering codified in Article 282 of the Turkish Penal Code.

*Id.* ¶ 5.  Mr. Kaçmaz asserts that the Turkish Financial Crimes Investigation Board "identified various transactions Turkyolu has conducted with [the Respondent Banks]" and that "[t]he information sought from [the Respondent Banks] would be highly relevant to our ongoing criminal proceedings and is admissible in Turkish prosecutions." *Id.* ¶¶ 6, 8.  For these reasons, Mr. Kaçmaz stresses that "it is crucial that [his] office receives access to any records held by the [Respondent Banks]." *Id.* ¶ 8.

In addition to Mr. Kaçmaz's declaration, Türkiye submitted a copy of a criminal indictment filed in June 2017 in connection with a Turkish insider-trading prosecution.  Dkt. 1-4 ("2017 Indictment").  The 2017 Indictment lists Turkyolu as one of several defendants and alleges violations of "Articles 106/1 of the Capital Market Law, 53/1 of the Turkish Penal Code." *Id.* at 2.  According to the 2017 Indictment, Turkyolu traded on non-public information regarding "partnership talks" between Bank Asya and Qatar Islamic Bank that took place in early 2014 and were announced on March 25, 2014.  *Id.*  Specifically, the indictment alleges that Turkyolu and his associates purchased Bank Asya shares "at a low price and, after Bank Asya publicly announced that partnership talks had begun with [Qatar Islamic Bank], they sold the previously purchased [Bank Asya] shares at a high price, thus gaining benefit." *Id.*  Türkiye has not provided any information, beyond the 2017 Indictment itself, concerning the status of the prosecution.

## B.    Procedural History

The Court granted Türkiye's Application on December 17, 2024, authorizing Türkiye to serve the Subpoenas on the Respondent Banks.  Dkt. 5.  Türkiye served the Subpoenas on Bank of America and Wells Fargo, respectively, on December 18, 2024, and December 23, 2024.  Dkt. 25 (Declaration of Michael C. Miller) ¶ 5.

5

On April 4, 2025, Turkyolu appeared in this matter as an interested party and sought leave to intervene for purposes of moving to quash the Subpoenas.  Dkt. 8 ("April 4 Turkyolu Letter"). Turkyolu asserted that Türkiye served the Subpoenas on the Respondent Banks prior to serving them on him, in violation of Federal Rule of Civil Procedure 45(a)(4).  *Id.* at 2; *see* Fed. R. Civ. P. 45(a)(4).    Turkyolu  also  argued  that  Türkiye's  Application  does  not  satisfy  the  statutory requirements  of  Section  1782  because  "the  Application  does  not  seek  discovery  'for  use  in  a proceeding in a foreign or international tribunal.'"  April 4 Turkyolu Letter at 2 (quoting 28 U.S.C. § 1782(a)).  He further contended that the discretionary factors identified by the Supreme Court in *Intel  Corp.  v.  Advanced  Micro  Devices,  Inc.*  ("*Intel*"),  542  U.S.  241  (2004),  weigh  against Türkiye's Application.  April 4 Turkyolu Letter at 3.

The Court held a telephonic conference on April 11, 2025, to discuss the issues raised in the April 4 Turkyolu Letter.  *See* April 11, 2025 Minute Entry.  At that conference, the Court granted Turkyolu's request to intervene, set a briefing schedule for his contemplated motion to quash, and ordered preliminary relief pending the Court's ruling on the forthcoming motion.  *Id.* The Court memorialized those rulings in a written order issued the same day.  Dkt. 15.[1]

On April 25, 2025, Turkyolu filed his motion to quash the Subpoenas and to vacate the Court's Order of December 17, 2024, granting Türkiye's Application.  Dkts. 23, 24 ("Motion"),

---

[1] In that Order, the Court, *inter alia*, directed Türkiye to refrain from seeking any further materials from the Respondent Banks pursuant to the Subpoenas and to promptly inform the Respondent Banks not to make any further productions of materials pursuant to the Subpoenas; to take reasonable steps to identify and secure all copies of materials produced to it under the Subpoenas and to prevent copies of such materials from being shared with any parties beyond Turkyolu, the Respondent Banks, and the other defendants in the Turkish criminal proceedings underlying Türkiye's Application in this matter; and to immediately cease reviewing and/or making further use of any materials already received under the Subpoenas, except to the extent necessary to identify and secure all copies of the materials produced pursuant to the Subpoenas. Dkt. 15 ¶¶ 1-3.

25-27.  Türkiye opposed that motion on May 9, 2025, Dkt. 28 ("Opposition"), and Turkyolu filed

a reply in support of his motion the following week, Dkt. 29 ("Reply").  The Court held oral

argument on Turkyolu's motion on July 1, 2025.  *See* Dkt. 31 ("Tr.").  On July 28, 2025, Turkyolu

filed a letter attaching supplemental authority, Dkt. 33, which Türkiye responded to three days

later, Dkt. 34.

## II.  Legal Standard

Through Section 1782, Congress created a mechanism "to provide federal-court assistance

in gathering evidence for use in foreign tribunals."  *Intel*, 542 U.S. at 247.  In relevant part, the

statute provides:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation. The order may be made . . .
> upon the application of any interested person and may direct that the testimony or
> statement be given, or the document or other thing be produced, before a person
> appointed by the court. . . . To the extent that the order does not prescribe otherwise,
> the testimony or statement shall be taken, and the document or other thing
> produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  This language establishes three basic requirements that must be met for a

party to obtain discovery pursuant to the statute: "(1) the person from whom discovery is sought

resides (or is found) in the district of the district court to which the application is made, (2) the

discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is

made by a foreign or international tribunal or any interested person."  *Brandi-Dohrn v. IKB*

*Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

It is well-established, however, that "a district court is not required to grant a § 1782(a)

discovery application simply because it has the authority to do so."  *Intel*, 542 U.S. at 264.  Instead,

"[o]nce section 1782(a)'s minimum requirements are met, 'a district court is free to grant discovery

in its discretion.'" *In re Zouzar Bouka; Vision Indian Ocean S.A.*, 637 F. Supp. 3d 74, 82 (S.D.N.Y. 2022) (quoting *In re Application for an Ord. Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997)).

In determining whether to exercise its discretion to grant a Section 1782 application, a district court "must consider the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts; and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re BonSens.org* ("*BonSens*"), 95 F.4th 75, 79-80 (2d Cir. 2024) (internal quotation marks omitted). To that end, the Supreme Court in *Intel* articulated four factors "that 'bear consideration' by district courts." *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 676 (2d Cir. 2022) (quoting *Intel*, 542 U.S. at 264). Those factors are:

(1) Whether the "person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent" because a foreign tribunal presumably has authority to order discovery on its own;

(2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) Whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) Whether the requests are unduly intrusive or burdensome.

*Id.* (quoting *Intel*, 542 U.S. at 264-65).

These factors, however, are non-exhaustive and "not to be applied mechanically," and thus, "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018); *see also In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022) ("*Intel* does

not mandate that every factor support a court's exercise of discretion or that all factors need even be considered.").  For instance, "a district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment."  *Brandi-Dohrn*, 673 F.3d at 81; *see Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995) ("[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*.").  And in the context of discovery applications brought by law enforcement authorities, district courts also retain "considerable discretion" to withhold assistance "in situations where the foreign government has, for example, insufficient basis to believe that evidence may be found here, or is simply seeking to harass political opponents."  *United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n* ("*Sealed 1*"), 235 F.3d 1200, 1205 (9th Cir. 2000).

While the parties are largely in agreement regarding the legal standards applicable to Section 1782 applications, they disagree as to how those standards should be applied in the procedural context of Turkyolu's motion.  Turkyolu maintains that to secure vacatur of the Court's December 17, 2024 Order and quashal of the Subpoenas, he need only show that Türkiye's Application fails to satisfy Section 1782's statutory requirements, that the discretionary *Intel* factors disfavor the Application, or that Türkiye failed to comply with Rule 45(a)(4).  Reply at 1-3, 8-9.  Türkiye, by contrast, argues that Turkyolu must identify a basis to quash the Subpoenas under Rule 45(d)(3) and that to vacate the Court's December 17, 2024 Order he must make showing of exceptional circumstances under Rule 60(b)(1).  Opposition at 5-7.[2]

---

[2] Rule 45(d)(3) provides four mandatory and two discretionary bases for modifying or quashing a subpoena.  Under that rule, a district court "must quash or modify a subpoena that: (i)

In the Court's view, Turkyolu has the better of this argument.  Section 1782 applications are frequently made—and granted—on an *ex parte* basis, meaning that the party against whom the discovery is to be used in the foreign proceeding often lacks the ability to challenge the propriety of the discovery request before the court rules on it.  *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").  That scheme does not run afoul of due process because the affected party may later move to intervene to "challenge the court's power to issue the subpoena under the terms of the authorizing statute," thereby obtaining a full and fair review of the merits of the application under Section 1782.  *In re Application of Salem* ("*Salem*"), No. 24 Misc. 5 (JPC), 2024 WL 3026670, at *9 (S.D.N.Y. June 17, 2024) (citing *In re Application of Sarrio, S.A.* ("*In re Sarrio*"), 119 F.3d 143, 148 (2d Cir. 1997)); *see also In re Letter of Request from Crown Prosecution Serv. of U.K.* ("*In re United Kingdom*"), 870 F.2d 686, 689 (D.C. Cir. 1989) (Ginsburg, J.) ("[O]ne against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused.").  In addition, parties may move to quash subpoenas issued pursuant to Section 1782

---

fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A). And a district court "may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B).

Rule 60(b)(1) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for reasons including "mistake." Fed. R. Civ. P. 60(b)(1).  The Supreme Court has held that Rule 60(b)(1) "covers all mistakes of law made by a judge."  *Kemp v. United States*, 596 U.S. 528, 534 (2022).  Under Rule 60(c)(1), a motion under Rule 60(b)(1) "must be made within a reasonable time," which can be "no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  There is no dispute that Turkyolu brought his motion within one year of the Court's December 17, 2024 Order.

based on the applicant's failure to comply with Rule 45's procedural requirements, including its requirement that "before [a subpoena] is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4); *see In re Hornbeam Corp.* ("*Hornbeam*"), No. 14 Misc. 424 (VSB), 2015 WL 13647606, at *8-9 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) (explaining that it is within a district court's discretion to quash a subpoena issued pursuant to Section 1782 for failure to comply with Rule 45(a)(4)'s notice requirement).

This due process-friendly regime is incompatible with Türkiye's view that to obtain relief from an *ex parte* order authorizing discovery under Section 1782, an affected party to the foreign proceeding must either identify a specific ground under Rule 45(d)(3) for moving to quash or demonstrate that exceptional circumstances beyond the challenger's inability to previously contest the *ex parte* application justify relief under Rule 60(b)(1). Türkiye's position, if accepted, would allow Section 1782 applicants to substantially narrow the right of affected parties to contest discovery applications via the simple expedient of seeking approval on an *ex parte* basis. When reviewing subsequent challenges to Section 1782 orders, however, courts have instead conducted a *de novo* review of whether the application satisfied the statute's requirements and whether the discovery was properly authorized in light of the discretionary *Intel* factors, without requiring a separate showing of exceptional circumstances. *See, e.g.*, *Brandi-Dohrn*, 673 F.3d at 79-84; *Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 186-91 (2d Cir. 1999); *In re Banco BTG Pactual S.A.*, No. 24 Misc. 304 (AT), 2025 WL 1079221, at *2-4 (S.D.N.Y. Apr. 9, 2025); *Salem*, 2024 WL 3026670, at *9; *In re Republic of Kazakhstan*, No. 23 Misc. 283 (ER), 2023 WL 8373070, at *2 (S.D.N.Y. Dec. 4, 2023); *In re China Constr. Bank (Asia) Corp.* ("*In re China*"), No. 23 Misc. 17 (JMF), 2023 WL 3791711, at *1-2 (S.D.N.Y. June 2, 2023); *In re Webuild S.P.A.*, No. 22 Misc.

140 (LAK), 2022 WL 17807321, at *1 (S.D.N.Y. Dec. 19, 2022); *In re Costa Pinto*, No. 21 Misc. 663 (VEC), 2022 WL 4088012, at *5-9 (S.D.N.Y. Sept. 6, 2022); *Hornbeam*, 2015 WL 13647606, at *3-9.  By contrast, in the cases that Türkiye relies on in support of its view that an additional showing of exceptional circumstances is required under Rule 60(b)(1), Opposition at 6-7, the party seeking to vacate the discovery order had already been afforded a prior opportunity to contest the relevant application and was essentially seeking a second bite at the apple.  *See In re Application of Orthogen Int'l GmbH*, No. 24 Misc. 152 (VSB), 2025 WL 1265878, at *1-2 (S.D.N.Y. Apr. 30, 2025); *In re Accept Delight Int'l, Ltd.*, No. 16 Misc. 125 (JMF), 2019 WL 6716419, at *1-2 (S.D.N.Y. Dec. 10, 2019).

Accordingly, to the extent a showing of exceptional circumstances under Rule 60(b)(1) is necessary to challenge an order allowing discovery under Section 1782, an affected party may satisfy that burden by showing that it was unable to previously challenge the Section 1782 application by virtue of that application having been made and approved on an *ex parte* basis. Here, Turkyolu's motion represents his first opportunity to challenge the propriety of Türkiye's Application and the Court's *ex parte* Order granting the Application, and there is no dispute concerning Turkyolu's diligence in asserting his rights once he became aware of the Application and the Subpoenas.  The Court will therefore consider Turkyolu's motion under Rule 45(a)(4) and by evaluating whether Türkiye's Application satisfies Section 1782's statutory requirements and discretionary factors.

### III.  Discussion

On several grounds, Turkyolu moves to quash the Subpoenas and to vacate the Court's December 17, 2024 Order granting Türkiye's Application.  Turkyolu first argues that Türkiye violated Federal Rule of Civil Procedure 45(a)(4) by failing to notify him of the Subpoenas before

serving them on the Respondent Banks.  Motion at 9-10; Reply at 1-3.  Turkyolu also maintains that the Application does not satisfy the statutory requirement that the discovery sought be "for use" in a foreign proceeding.  Motion at 11-19; Reply at 4-5.  And in any event, Turkyolu contends, the discretionary *Intel* factors weigh against the Application.  Motion at 19-24.  The Court addresses each of Turkyolu's challenges in turn.

**A.    Türkiye Violated Rule 45(a)(4) By Failing to Timely Serve the Subpoenas on Turkyolu.**

Section 1782 commands that, unless the district court has ordered otherwise, discovery must be conducted "in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).  And under Rule 45(a)(4), if a subpoena "commands the production of documents," then "before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  Fed. R. Civ. P. 45(a)(4).  Courts have accordingly recognized that "unless the district court's authorizing order provides otherwise, a party engaged in foreign litigation who serves a § 1782 subpoena *duces tecum* to obtain documents for use in the foreign litigation must first serve notice on all parties to the foreign proceedings."  *Hornbeam*, 2015 WL 13647606, at *5; *see Salem*, 2024 WL 3026670, at *10 (holding that a Section 1782 applicant violated Rule 45(a)(4) by failing to provide notice of a subpoena to the opposing party in the underlying foreign litigation prior to serving it).

In the context of *ex parte* discovery applications under Section 1782, Rule 45(a)(4)'s notice requirement functions as a critical procedural safeguard meant to facilitate the right of adverse parties in the underlying foreign proceeding to challenge the discovery request, thereby ensuring that "[t]hese one-sided proceedings do not offend due process."  *Salem*, 2024 WL 3026670, at *9; *see Gushlak*, 486 F. App'x at 217 (explaining that *ex parte* Section 1782 proceedings do not violate due process because parties may "later challenge any discovery request by moving to quash").

Given the importance of Rule 45(a)(4)'s notice requirement in the Section 1782 context, courts retain discretion to quash subpoenas served in violation of that rule, at least where the violation resulted in prejudice to the adverse party.  *See Hornbeam*, 2015 WL 13647606, at *8; *Salem*, 2024 WL 3026670, at *16.

Under a straightforward application of Rule 45(a)(4), Türkiye violated Section 1782 in taking discovery pursuant to the Subpoenas.  It is undisputed that Turkyolu is a party to the Turkish insider-trading prosecution underlying Türkiye's Application.  Application ¶ 2 (explaining that the discovery being sought is in connection with an insider-trading prosecution and money-laundering investigation targeting Turkyolu and others); *see Hornbeam*, 2015 WL 13647606, at *5 ("[T]he Federal Rules generally require notice to one's actual or expected adversaries when taking discovery from third parties.").  Nor is it disputed that Türkiye served the Subpoenas on the Respondent Banks without providing notice and copies of the Subpoenas to Turkyolu beforehand.  And nothing in the Court's December 17, 2024 Order excused compliance with the Federal Rules.  As a result, Türkiye violated Section 1782's requirement that discovery be taken "in accordance with" Rule 45(a)(4).  28 U.S.C. § 1782(a).  That violation, in turn, deprived Turkyolu of his right to timely challenge the Subpoenas.  *See In re Sarrio*, 119 F.3d at 148.

Türkiye nevertheless contends that it was not required to provide Turkyolu with advance notice of the Subpoenas for several reasons, but none are persuasive.

First, Türkiye argues that Congress could not have intended to require targets of foreign criminal investigations to receive notice of subpoenas under Rule 45(a)(4).  That argument depends on two premises: (1) that while Section 1782 expressly provides for discovery in connection with criminal investigations and prosecutions, "Congress did not—but could have— require that targets, subjects, or witnesses of foreign criminal investigations be notified and served

with subpoenas issued pursuant to Section 1782"; and (2) that such a requirement would make little sense in the criminal context because "disclosure of details of a criminal investigation could lead to the destruction of evidence, tampering with witnesses or the flight of potential targets." Opposition at 2.  But contrary to Türkiye's suggestion that Congress did not require targets of foreign criminal investigations to be notified of subpoenas, Section 1782 provides a default rule— applicable on its face to criminal and civil matters alike—that discovery must be taken in accordance with the Federal Rules of Civil Procedure, which includes Rule 45(a)(4).  And the statute itself affords district courts discretion to prescribe the method for taking discovery, thereby accommodating Türkiye's concern that strict compliance with Rule 45(a)(4) in the criminal context would compromise the effectiveness of law enforcement.  *See* 28 U.S.C. § 1782(a) (providing that a court "may prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing" and that the Federal Rules only apply "[t]o the extent that the [court] does not prescribe otherwise").  In the end, if "Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004).

Türkiye next argues that it was not required to serve Turkyolu since "he has not appeared in the foreign criminal proceeding and therefore he is not entitled to service under Rule 45(a)(4)." Opposition at 3 (citing Fed. R. Civ. P. 5(a)(2)).  The rule that Türkiye relies on, Rule 5(a)(2), provides that "[n]o service is required on a party who is in default for failing to appear."  Fed. R. Civ. P. 5(a)(2).  Türkiye contends that because Turkyolu "is currently a fugitive from justice, having fled Türkiye to avoid prosecution," it was not required to serve him under the exception provided by Rule 5(a)(2).  Opposition at 3 (quoting Kaçmaz Decl. ¶ 4).

On the record presented, the Court cannot find that Rule 5(a)(2) excused Türkiye from complying with Rule 45(a)(2). Rule 5(a)(2) requires that a party be "in default for failing to appear" before service is excused. Fed. R. Civ. P. 5(a)(2). But the only information Türkiye has presented regarding the status of the insider-trading prosecution is that in 2017, Turkish prosecutors presented an indictment naming Turkyolu and others as defendants to a court with the request that the indictment "be accepted," 2017 Indictment at 4,[3] and a general statement by Mr. Kaçmaz that there are "active and ongoing prosecutions of [Turkyolu] and associated individuals for insider trading and money laundering," Kaçmaz Decl. ¶ 3.[4] Türkiye has provided no additional information regarding the insider-trading prosecution, such as the status of those proceedings, whether Turkyolu's obligation (if any) to appear in those proceedings has accrued, or whether Turkish law would consider Turkyolu to have defaulted in that case in the sense contemplated by Rule 5(a)(2). Without any information to that effect, it is impossible to determine whether Turkyolu falls within Rule 5(a)(2), even assuming that the rule could properly be applied in the context of a Turkish criminal proceeding at all.

Finally, Türkiye argues that Section 1782 must be interpreted consistent with its purpose of "'encourag[ing] reciprocal assistance' from other countries." Opposition at 4 (quoting *Webuild S.P.A. v. WSP USA Inc.*, 108 F.4th 138, 142 (2d Cir. 2024)). "[I]f foreign governments are required

---

[3] At oral argument, counsel for Türkiye was unable to provide any explanation regarding the significance, if any, of the 2017 Indictment's apparent request that it "be accepted," or whether, assuming that a court was required to take action to "accept" the indictment under Turkish law, a court has in fact done so. Tr. at 24:8-16.

[4] The Court notes that the only factual support for Türkiye's contention that Turkyolu is a fugitive is Mr. Kaçmaz's assertion that Turkyolu "fled Türkiye to avoid prosecution." Kaçmaz Decl. ¶ 4. Turkyolu, on the other hand, states that he left Türkiye in 1999 and has not returned to the country since then. Turkyolu Decl. ¶¶ 8-9. Neither party has presented any additional information about whether or not Turkyolu faced a credible threat of prosecution at the time he left Türkiye in 1999, or about whether any such threat is related to the current criminal inquiries involving him and other members of the Gülen movement.

to serve Section 1782 subpoenas on witnesses, targets or subjects of criminal investigations," Türkiye explains, then "they are likely to impose reciprocal burdens on criminal investigations undertaken by the United States." *Id.* Türkiye therefore concludes that "[r]equiring service under Rule 45(a)(4) on a fugitive in a foreign criminal proceeding does not encourage reciprocal assistance," and warns that doing so "could impose reciprocal barriers on the United States in conducting its own criminal investigations of fugitives." *Id.* at 4-5.

As the Supreme Court has explained, however, "no statute yet known pursues its stated purpose at all costs," and therefore courts "will not presume . . . that any result consistent with [a party's] account of the statute's overarching goal must be the law." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (alterations adopted). Instead, courts "will presume more modestly . . . that the legislature says what it means and means what it says" in the statutes it enacts. *Id.* (alterations adopted and internal quotation marks omitted); *see also Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent."). And again, the plain text of Section 1782 requires by default that discovery taken pursuant to the statute comply with the Federal Rules of Civil Procedure—whether the discovery being sought is for use in a civil case or in a criminal prosecution. The Court cannot override that clear textual command simply because, in Türkiye view, a different approach would better serve the purpose of the statute in this context.

In any event, Türkiye's concern regarding reciprocal assistance is unfounded. As noted, Section 1782 simply makes compliance with the Federal Rules—and by extension Rule 45(a)(4)— the default, and affords district courts discretion to fashion alternative procedures for taking discovery. *See* 28 U.S.C. § 1782(a). That discretion includes the authority to allow discovery to be taken according to "the practice and procedure of the foreign country or the international

tribunal." *Id.* Thus, to the extent that the circumstances of a given case call for alternative procedures, the statute offers the necessary flexibility. The Court therefore perceives no genuine risk that a faithful application of Section 1782's *default* rule that the Federal Rules govern the taking of discovery will lead foreign governments to impose undue hardships on criminal investigations carried out by the United States.

For these reasons, the Court holds that Türkiye violated Rule 45(a)(4) by failing to timely notify Turkyolu of the Subpoenas. And because, for the reasons explained below, the Court finds persuasive Turkyolu's challenge to Türkiye's Application under Section 1782, the Court holds that the Rule 45(a)(4) violation resulted in prejudice to Turkyolu, thereby justifying quashal of the Subpoenas. *See Hornbeam*, 2015 WL 13647606, at *8 (explaining that under the usual approach in this District, a showing of prejudice is necessary to justify quashing subpoenas served in violation of Rule 45(a)(4)).

## B. Türkiye's Application Does Not Show that the Requested Discovery is "For Use" in Foreign Proceedings.

Turkyolu argues that Türkiye's Application fails to satisfy the second statutory requirement under Section 1782—that "the discovery is for use in a foreign proceeding before a foreign tribunal." *Brandi-Dohrn*, 673 F.3d at 80; *see* 28 U.S.C. § 1782(a) (authorizing district courts to allow discovery of materials "for use in a proceeding in a foreign or international tribunal"). As to the insider-trading prosecution represented by the 2017 Indictment, Turkyolu contends that the Application falls short of demonstrating that the discovery sought by the Subpoenas is relevant to that proceeding. Motion at 18-19. And as to the money-laundering investigation, Turkyolu argues that the Application fails to "substantiate the existence of a foreign proceeding under Section 1782." *Id.* at 15-18 (internal quotation marks omitted). Turkyolu also maintains that the Turkish courts in which he would be prosecuted cannot be expected to weigh the evidence against him in

an impartial or objective manner, and therefore any criminal proceedings against him in those courts would be "inconsistent with the concept of impartial adjudication intended by the term 'tribunal.'" *Id.* at 11-15 (quoting *Fonseca v. Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980)).

For the following reasons, the Court agrees that Türkiye's Application fails to adequately show that the requested discovery would be "for use" in foreign proceedings, and therefore declines to address Turkyolu's contention that the Turkish court in which he would be prosecuted is not a "tribunal" under Section 1782.

### 1. The Insider-Trading Prosecution

In its Application, Türkiye represents that the Subpoenas seek discovery for use in a criminal insider-trading prosecution against Turkyolu. *See* Application ¶ 2 (seeking relief "for the purposes of obtaining necessary discovery in aid of an ongoing criminal prosecution of [Turkyolu] . . . for insider trading"); Kaçmaz Decl. ¶ 3 (referring to an "active and ongoing" prosecution of Turkyolu for insider trading); 2017 Indictment at 1 (listing Turkyolu as a defendant). Türkiye maintains that its request for discovery in connection with that prosecution satisfies Section 1782's "for use" requirement. Opposition at 9.

The Second Circuit has explained that "[t]he 'for use' statutory prerequisite assesses the *practical ability* of an applicant to place a beneficial document—or the information it contains— before a foreign tribunal." *BonSens*, 95 F.4th at 80 (internal quotation marks omitted). In order to satisfy that requirement, "the requested discovery must be employed with some advantage or serve some use in the proceeding." *Id.* (internal quotation marks omitted). In other words, "[a] § 1782 applicant satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 295 (2d Cir. 2015). Although courts have characterized the "for use" showing as a low burden, *In re*

19

*Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 175 (S.D.N.Y. 2020), Second Circuit precedent "makes clear that an applicant must still demonstrate that the intended use of the discovery is more than merely speculative," *BonSens*, 95 F.4th at 80. Thus, "an applicant who fails to demonstrate that the evidence is minimally relevant to the foreign proceeding" cannot obtain discovery pursuant to the statute. *Id.*; *see also Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015) ("[I]t is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding.").

Under these principles, Türkiye's Application does not sufficiently demonstrate that the requested discovery is "for use" in the insider-trading prosecution.

To begin, Türkiye has not adequately shown that it "will actually be able to *use* the information" in the insider-trading prosecution. *KPMG*, 798 F.3d at 120. The status and outlook of that prosecution are murky: Türkiye has provided a copy of the 2017 Indictment, generic statements by Mr. Kaçmaz that there are active prosecutions against Turkyolu, and a representation that the discovery would be admissible in the relevant Turkish court, but virtually nothing beyond that. It is unclear, therefore, whether the nearly decade-old insider-trading charge in fact remains active in any realistic sense, what stage the prosecution has reached, or whether some "merits proceeding" in that prosecution at which the discovery could be used is "within reasonable contemplation." *BonSens*, 95 F.4th at 81 (internal quotation marks omitted); *see IJK Palm*, 33 F.4th at 680 (explaining that district courts must "assess the procedural mechanism by which a movant may inject the discovery it seeks into foreign proceedings"). Without additional information to that effect, the Court cannot determine whether Türkiye has "the practical ability to inject the requested information into" the insider-trading prosecution, *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017), or whether there is sufficient reason to expect that the

discovery "will be employed with some advantage or serve some use in [that] proceeding," *Mees*, 793 F.3d at 298.  Thus, Türkiye has not shown that its practical ability to use the requested discovery to advance the 2017 insider-trading charge against Turkyolu is "more than merely speculative." *BonSens*, 95 F.4th at 80.

Türkiye's Application also fails to demonstrate that the requested discovery is at least "minimally relevant" to the insider-trading prosecution.  *Id.*  Although, as a general matter, evidence of insider-trading activity obviously *can* be found in financial records of the sort covered by the Subpoenas, Türkiye does not supply any basis to conclude that Turkyolu's Bank of America and Wells Fargo records might turn up evidence relevant to that prosecution.  The Application does not, for example, develop any allegation that Turkyolu used accounts at Bank of America or Wells Fargo to engage in any prohibited securities transactions.  Nor does the Application articulate any reason to believe that the proceeds of the insider-trading activity alleged in the 2017 Indictment flowed through Turkyolu's accounts at those banks.[5]

Instead, Türkiye relies almost entirely on Mr. Kaçmaz's declaration to show that the requested discovery is relevant to the insider-trading prosecution.  Yet Mr. Kaçmaz states only that the requested discovery "would be highly relevant to [Türkiye's] ongoing criminal proceedings" and notes that Turkish authorities previously "identified various transactions Turkyolu has conducted with [the Respondent Banks]."  Kaçmaz Decl. ¶¶ 6, 8.  Those conclusory statements do

---

[5] In its Opposition, Türkiye suggests that it is "investigating where the money from the insider trading scheme was transferred."  Opposition at 11.  But neither Türkiye's Application nor the materials presented in support of the Application draw that connection.  Mr. Kaçmaz, for instance, refers vaguely to "illicit activities" as the offense underlying the money-laundering investigation, Kaçmaz Decl. ¶ 5, and does not articulate, with any degree of specificity, a connection between Turkyolu's accounts at the Respondent Banks and the 2017 insider-trading charge.  At oral argument, counsel for Türkiye was also unable to identify any facts in the record establishing such a connection.  Tr. at 33:9-17.

nothing to show that the sweeping discovery sought—Turkyolu's financial transactions from December 18, 2002, until the present, as well as "all documents and communications relating to potential fraud, money laundering or suspicious activity," Subpoenas at 7, 19—is relevant to the insider-trading activity alleged in the 2017 Indictment, which only took place during a few months in 2014. *See In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) ("[T]he Second Circuit has made clear that the requirements of § 1782 are not satisfied by the requesting party reciting some minimal relation to a pending foreign proceeding."). Plus, Türkiye does not provide any context behind the transactions identified in Mr. Kaçmaz's declaration and attached to the Subpoenas, which on their face show nothing more than Turkyolu engaging in financial transactions with other Turkish entities or individuals using his accounts at the Respondent Banks.[6] Absent some indication that evidence relevant to the insider-trading prosecution will actually be found in Turkyolu's financial records or other documents kept by the Respondent Banks, Türkiye cannot carry its burden of showing that the discovery sought is relevant to that proceeding. *See Sealed 1*, 235 F.3d at 1205 (explaining that a Section 1782 application may be denied when there is an "insufficient basis to believe that evidence may be found here"). Although the Court does not suggest that any particular showing is necessary to satisfy the low bar of relevance imposed under the statute, Türkiye was at least required to make *some* showing to that effect. And in the Court's view, it has not done so.

For these reasons, the Court holds that Türkiye has not shown that the requested discovery is "for use" in the insider-trading prosecution represented by the 2017 Indictment.

---

[6] In response to a question by the Court at oral argument regarding whether there is any suggestion in the record that Turkyolu had used his accounts at the Respondent Banks to commit insider trading or any other crime, counsel for Türkiye responded that he was aware of "[n]othing specific" to that effect. Tr. at 24:17-24.

### 2.  The Money-Laundering Investigation

Türkiye also maintains that the Application satisfies Section 1782 because the discovery sought under the Subpoenas is for use in a money-laundering investigation (and, presumably, a potential prosecution arising out of that investigation).  Opposition at 9; *see* Application ¶ 2 (explaining that the requested discovery is also "in aid of . . . an investigation for potential money laundering"); Kaçmaz Decl. ¶ 5 (stating that Turkish authorities are investigating "whether the proceeds of illicit activities" have been transferred "to individuals and entities operating within the Republic of Türkiye").

As Türkiye correctly points out, "in order to qualify as a 'foreign proceeding' within the meaning of the statute, the proceeding in question need not be 'pending' or 'imminent.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020) (quoting *Intel*, 542 U.S. at 259).  Nevertheless, "the planned proceedings must be within reasonable contemplation," *KPMG*, 798 F.3d at 123, and "[t]his requirement . . . forms an outer limit on which proceedings may constitute the basis of a § 1782 application," *Mangouras*, 980 F.3d at 100.  The Second Circuit has interpreted that limitation to mean that "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *KPMG*, 798 F.3d at 123.  And to that end, an applicant must "show reliable indications of the likelihood that proceedings will be instituted within a reasonable time."  *IJK Palm*, 33 F.4th at 677 (internal quotation marks omitted); *accord In re United Kingdom*, 870 F.2d at 692.  Although the Second Circuit has "not delineated what precisely an applicant must show to establish such indications," *IJK Palm*, 33 F.4th at 677 (internal quotation marks omitted), it is clear that "[a]t a minimum, a § 1782 applicant must present to the district court some concrete basis

from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye," *KPMG*, 798 F.3d at 124.

Under these principles, Türkiye has not shown that criminal proceedings related to the money-laundering investigation referred to in its Application are within reasonable contemplation. *See Mangouras*, 980 F.3d at 101 (assessing whether criminal proceedings arising out of the applicant's investigation are "more than merely speculative"); *In re Wilhelm*, 470 F. Supp. 2d 409, 411 (S.D.N.Y. 2007) (similar).[7]  Regarding that investigation, Mr. Kaçmaz states that Turkish authorities are attempting to determine "whether the proceeds of illicit activities (including those taking place within the United States of America) have been transmitted and transferred, through international wire transfers and other means, to individuals and entities operating within the Republic of Türkiye in violation of the prohibitions on money laundering codified in Article 282 of the Turkish Penal Code."  Kaçmaz Decl. ¶ 5.  Türkiye's Application, however, nowhere identifies what potential "illicit activities" the money-laundering investigation is based on.[8]  That is problematic because under Article 282 of the Turkish Penal Code, a money-laundering charge must relate to the proceeds of a qualifying predicate offense.  Dkt. 27 ("Akkoç Decl.") ¶¶ 9-10.

---

[7] Section 1782 authorizes discovery "for use in a proceeding in a foreign or international tribunal, *including criminal investigations conducted before formal accusation*."  28 U.S.C. § 1782(a) (emphasis added).  Türkiye has not argued or otherwise demonstrated that the money-laundering investigation referred to in its Application is being conducted by an entity functioning as an impartial "tribunal" with respect to that matter, such that the investigation would itself qualify as a foreign proceeding under the statute.  *See, e.g.*, *In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456, 460-61 & nn.6-8 (2d Cir. 2014) (discussing the applicability of Section 1782 to criminal investigations conducted by impartial magistrates and similar inquisitorial bodies).  Accordingly, the Court assesses whether criminal proceedings before a Turkish court relating to the money-laundering investigation are within reasonable contemplation.

[8] As explained in *supra* note 5, Türkiye's Application does not explain whether the money-laundering investigation is based on or related to the insider-trading offense alleged in the 2017 Indictment.  Instead, that connection is articulated for the first time in Türkiye's Opposition.

Thus, Türkiye's submissions neither "provide the legal theory supporting such a proceeding" nor "clearly lay out either the content of [its] claims or even a sufficiently concrete basis for [its] belief that" Turkyolu might be guilty of money laundering. *Mangouras*, 980 F.3d at 101. Absent any non-conclusory information regarding Türkiye's investigation, the Court cannot assess whether a money-laundering prosecution against Turkyolu is within reasonable contemplation.

In addition, Türkiye's Application lacks "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *KPMG*, 798 F.3d at 123 (internal quotation marks omitted). For instance, the Application does not contain reliable information concerning the stage of the money-laundering investigation, such as how much progress has been made, what investigative steps remain to be taken, or any other indications regarding the likelihood that criminal charges will be filed within the foreseeable future. *See generally* Application; Kaçmaz Decl.[9] To that end, the most particularized information concerning the progress of the investigation is Mr. Kaçmaz's statement that Türkiye's Financial Crimes Investigation Board "has identified various transactions Turkyolu has conducted with Bank of America, N.A. and Wells Fargo, N.A.," copies of which are attached to the Subpoenas. Kaçmaz Decl. ¶ 6; *see* Subpoenas at 9, 21. Yet Türkiye's submissions nowhere offer any explanation regarding the significance of those financial transactions in the context of its money-laundering investigation, other than the fact that they reveal the not-particularly-shocking fact that Turkyolu, a Turkish national who owned businesses and had associates in Türkiye, engaged in financial transactions with what appear to be other Turkish individuals and/or entities using his accounts with the Respondent Banks.[10]

---

[9] At oral argument, counsel for Türkiye indicated that he lacked any additional information concerning the stage of the money-laundering investigation or how close the investigation was to a criminal proceeding. Tr. at 33:18-21.

[10] As noted in *supra* n.6, Türkiye's counsel was not able to identify anything in the record suggesting that the transactions listed in the Application are connected to any criminal activity.

Further, Türkiye does not dispute that "under Turkish law, a money laundering offense cannot be established unless and until the underlying predicate 'offense' has resulted in a conviction that is upheld on appeal and finalized by the Supreme Court." Akkoç Decl. ¶ 10. Thus, the lack of any information regarding the prospects of Türkiye securing a qualifying predicate conviction in the foreseeable future, or even the prospects of Türkiye otherwise establishing that such a predicate offense occurred, renders any merits proceeding at which Türkiye could present evidence of Turkyolu's alleged money-laundering activities even more speculative. *See BonSens*, 95 F.4th at 80-81 ("If an applicant's ability to initiate a proceeding in which the requested discovery may be used depends on some intervening event or decision, the applicant must provide an objective basis on which to conclude that the event will occur or the requisite decision will be favorable." (internal quotation marks omitted)).

Plus, Mr. Kaçmaz's declaration suggests that Türkiye is still attempting to determine *whether* any unlawful transfers of criminal proceeds took place. Kaçmaz Decl. ¶ 5. And the Application characterizes the investigation as relating to *potential* money laundering. Application ¶ 2. These vague and tentative characterizations of the investigation—in the absence of other reliable indicia that a prosecution is within reasonable contemplation—suggest that a prosecution of Turkyolu arising out of that investigation is, at best, speculative. *See Mangouras*, 980 F.3d at 101 (holding that criminal proceedings were not within reasonable contemplation where the applicant indicated that the proceedings would only be commenced "depending on what the evidence shows" and that the requested discovery would enable it to determine "whether or not" criminal activity took place (internal quotation marks and emphasis omitted)); *In re China*, 2023 WL 3791711, at *2 ("[C]ourts in this District have rejected Section 1782 applications when the petitioner sought discovery to determine *whether* to initiate a [foreign] proceeding.").

To be clear, the Court is sensitive to Türkiye's concern that requiring it to reveal too much information at this stage could jeopardize the ongoing criminal investigation. *See* Opposition at 10. And nothing in the Court's analysis should be taken as a suggestion that to carry its burden of showing that a money-laundering prosecution of Turkyolu is within reasonable contemplation, Türkiye's case against him must already be rock-solid. The Court, moreover, does not suggest that the mere fact that additional discovery may be required to reach a final decision whether to prosecute Turkyolu renders discovery under Section 1782 unavailable. But without some measure of reliable information concerning the outlook of the money-laundering investigation, the Court cannot find, based on objective indicia, that criminal proceedings relating to that investigation are within reasonable contemplation. And insisting on a modicum of additional information demonstrating that criminal proceedings are within reasonable contemplation is particularly appropriate here, given that Türkiye's sparse Application "may reflect more of a fishing expedition into [Turkyolu's] financial activities than a legitimate use of § 1782 to further pursuit of criminals." *In re Republic of Turkey*, No. 20 Civ. 5012 (MFK), 2021 WL 3022318, at *4-5 (N.D. Ill. July 16, 2021) (denying a Section 1782 application filed by Türkiye that "[did] not provide any details regarding the nature of the purported criminal investigation" (internal quotation marks omitted)). Indeed, taking Mr. Kaçmaz's generic assertions regarding the investigation "on faith would seem particularly imprudent given the claimed political overlay" in this case. *Id.*

In the end, without additional information concerning the nature and prospects of the money-laundering investigation, the Court cannot determine whether criminal proceedings arising out of that investigation are "more than just a twinkle in counsel's eye," or whether Türkiye has "more than a subjective intent to undertake some legal action" against Turkyolu relating to the investigation. *KPMG*, 798 F.3d at 123-24. The Court therefore holds that, on the current record

presented, Türkiye cannot base its request for discovery on the money-laundering investigation referred to in the Application.

* * *

For these reasons, the Court concludes that Türkiye has not presented sufficient information concerning the insider-trading prosecution and the money-laundering investigation to enable it to rely on those matters in satisfying Section 1782's "for use" requirement.[11]  Because the Court holds that Türkiye has not satisfied the "for use" requirement on that ground, the Court does not reach Turkyolu's alternative argument that the Turkish court in which he would be prosecuted is not sufficiently impartial to qualify as a "tribunal" under the statute.

**C.    The Discretionary Section 1782 Factors Disfavor Türkiye's Application.**

Because the Court concludes that Türkiye's Application does satisfy Section 1782's "for use" requirement, it is not necessary to conduct a full analysis of the discretionary *Intel* factors. Even were the Application to satisfy the statutory requirements, however, the Court agrees with Turkyolu that the discretionary *Intel* factors weigh against the Application as currently constituted.

Start with the considerations that are not in dispute, and which favor Türkiye:  Under the first *Intel* factor, the Respondent Banks, who were the recipients of the Subpoenas, are not parties to or otherwise involved in the insider-trading prosecution or money-laundering investigation underlying Türkiye's Application.  And under the second factor, Turkyolu does not appear to dispute that the Turkish courts in which he would be prosecuted are receptive to federal-court

---

[11] The supplemental declaration by Mr. Kaçmaz attached to Türkiye's Opposition does not alter this conclusion.  That declaration, which was not part of Türkiye's Application, largely reiterates the statements made in Mr. Kaçmaz's original declaration without providing sufficient context regarding the purported criminal matters involving Turkyolu or the connection between those matters and the materials sought from the Respondent Banks pursuant to the Subpoenas.  *See* Dkt. 28-2.

judicial assistance under Section 1782(a).  *See In re Atvos Agroindustrial Investimentos*, 481 F. Supp. 3d at 176-77 ("A court should deny discovery on the basis of lack of receptiveness only where it is provided with 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782.'" (quoting *Euromepa*, 51 F.3d at 1100)).  Nor, under the third factor, does Turkyolu identify any relevant proof-gathering restriction that Türkiye's Application might be seeking to evade.  *See, e.g.*, *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 152 (2d Cir. 2022) (holding that an applicant's decision not to seek discovery through a Mutual Legal Assistance Treaty does not constitute circumvention for purposes of the third *Intel* factor).  Each of these considerations therefore weighs in Türkiye's favor.

Nevertheless, the Court holds that the sheer breadth of the discovery sought in Türkiye's Application, considered in light of the colorable allegations of political motivation presented in support of Turkyolu's motion, weighs heavily against the Application at this time.

Specifically, the Court agrees with Turkyolu that the categories of documents covered by the Subpoenas "are extremely broad and . . . are suggestive of a fishing expedition and, perhaps, a purpose beyond simply investigating potential money laundering in [Türkiye]."  *In re Republic of Turkey*, 2021 WL 3022318, at *7.  For instance, the Subpoenas seek "[a]ll documents relating to financial transactions made in U.S. dollars to, from, and through accounts held by [Turkyolu and the other Turkish defendants]" from December 18, 2002, to the present.  Subpoenas at 7, 19.[12] That request includes "all bank statements and any other records showing transfer of money and any other financial instrument, including but not limited to checks, wire transfers, or any other

---

[12] At oral argument, Türkiye's counsel attributed the breadth of the Subpoenas to the fact that Turkish prosecutors had identified a transaction by Turkyolu in December 2002, but could not provide any explanation regarding the significance of that transaction to the criminal matters identified in Türkiye's Application.  Tr. at 25:15-26:9.

method of transfer." *Id.* Yet the 2017 Indictment only alleges criminal conduct taking place during a few months in early 2014, and as discussed at *supra* III.B.1, the status of that prosecution is uncertain at best. Plus, Mr. Kaçmaz's declaration "provides what can only be described as the most minimal information" connecting Turkyolu's alleged money-laundering activity and the 2017 Indictment to the financial records sought by the Subpoenas. *In re Application of Republic of Turkey*, No. 20 Misc. 36 (EAP), 2021 WL 671518, at *7 (S.D. Ohio Feb. 22, 2021). The Subpoenas also seek "[a]ll documents and communications relating to [Turkyolu and the other Turkish defendants], including all documents and communications relating to potential fraud, money laundering or suspicious activity related to them individually or collectively." Subpoenas at 7, 19. But the Subpoenas do not define what they mean by "suspicious activity," a vague term that potentially covers a far broader swath of materials than those relevant to the insider-trading prosecution and money-laundering investigation identified in Mr. Kaçmaz's declaration.

The breadth of Türkiye's Application, the unclear status of the 2017 insider-trading prosecution, and the vague descriptions of the money-laundering investigation are particularly troubling in light of the political context of this case. Türkiye does not dispute that Turkyolu is a longtime member of the Gülen movement. Nor has it presented any factual challenge to Turkyolu's allegations concerning the Turkish government's efforts to retaliate, for political reasons, against members of the Gülen movement—which the Turkish government has branded the Fetullah Terrorist Organization, or "FETÖ" for short. Indeed, as one federal judge in the Southern District of Florida has found, Türkiye "has engaged in an open campaign of repression against individuals with perceived or actual ties to FETÖ," and "[t]he Turkish regime has frequently targeted individuals—including U.S. nationals—for prosecution on the basis of vindictive rumors and secret testimony." *Sirer v. Aksoy*, No. 21 Civ. 22280, 2023 WL 3166453,

at *7 (S.D. Fla. May 1, 2023).  And as recently as July 2024, more than 140 members of Congress expressed concern in a letter addressed to President Joseph R. Biden regarding the Turkish government's "transnational repression campaign . . . against its critics abroad," specifically highlighting Türkiye's efforts to retaliate against individuals associated with the Gülen movement. *Letter from Members of Congress to President Joseph R. Biden* (July 2, 2024), available at https://chrissmith.house.gov/uploadedfiles/rep_smith_turkey_human_rights_letter_to_president_ biden.pdf (last visited Aug. 1, 2025).  In sum, the mismatch between the breadth of the discovery sought by Türkiye and the vagueness of the materials presented in support of the Application, considered in light of the attendant political circumstances, creates an unacceptable risk that the discovery in this matter is being sought for improper reasons.

Even so, this Court stops short of definitively ruling that Türkiye's Application does not "reflect[] a good faith effort to elicit evidence that has probative value in a pending Turkish criminal investigation" and prosecution.  *In re Republic of Turkey*, 2021 WL 3022318, at *5 (internal quotation marks omitted).  It should also go without saying that the mere fact that Turkyolu is a member of the Gülen movement does not mean that he is immune from Turkish criminal prosecution, or that Türkiye is categorically precluded from seeking the aid of U.S. federal courts under Section 1782 in holding him accountable under Turkish law.  *See* Dkt. 28, *In re Application of Republic of Turkey*, 20 Misc. 36 (ALM) (S.D. Ohio Sept. 11, 2023) (granting in part a Section 1782 application filed by Türkiye seeking discovery for use in a money-laundering investigation).  Instead, the Court merely reaffirms that it cannot abdicate its responsibility to ensure that Section 1782 is not wielded as a tool of political repression.  And to that end, the need to prevent Section 1782 from being used to harass political opponents weighs strongly against approval of the Application as currently constituted.  *See Brandi-Dohrn*, 673 F.3d at 81 (explaining

that "a district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment"); *Sealed 1*, 235 F.3d at 1205 (acknowledging the "considerable discretion" afforded to district courts to ensure that a Section 1782 applicant is not "simply seeking to harass political opponents").

Accordingly, the Court agrees with Turkyolu that, as currently presented, Türkiye's Application does not pass muster under the discretionary factors relevant to the decision whether to allow discovery under Section 1782. The Court, however, does not rule out that Türkiye could properly obtain discovery for use in criminal matters against Turkyolu through a more carefully tailored and detailed application that is accompanied by reliable information supporting the statutory requirements and discretionary factors under Section 1782.

### IV. Conclusion

For these reasons, the Court grants Turkyolu's motion. The Subpoenas are hereby quashed, and the Court's December 17, 2024 Order, Dkt. 5, is vacated. Türkiye shall serve a copy of this Opinion and Order on the Respondent Banks no later than August 6, 2025. The parties are directed to submit simultaneous supplemental briefs of no more than 5,000 words each addressing the appropriate remedy with respect to the documents that have already been produced pursuant to the Subpoenas. The parties shall file those briefs on or before August 18, 2025. Also on or before August 18, 2025, Türkiye shall file a letter stating whether it intends to file a renewed application in this matter. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 23.

SO ORDERED.

Dated: August 1, 2025
      New York, New York

JOHN P. CRONAN
United States District Judge